FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2015 NOV 30 A 11: 09
CLERK'S OFFICE
AT GREENBELT
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KENNETH BONAPARTE, #352447 :

   Plaintiff :

v. : Case No.: GJH-15-738

WEXFORD HEALTH SOURCES, INC. :
KATHLEEN STORM,
  NURSE PRACTITIONER :
RN MELISSA
:
   Defendants

## MEMORANDUM OPINION

Kenneth Bonaparte has filed a civil rights complaint under 42 U.S.C. § 1983, seeking $500,000 in damages against Wexford Health Sources, Inc. ("Wexford") and one of its employees, Nurse Practitioner Kathleen Storm (collectively, the "Medical Defendants").[1] Bonaparte, a self-represented prisoner housed at the Eastern Correctional Institution in Westover, Maryland ("ECI"), alleges that he was provided inadequate medical care following a blow to the head. As a result, Bonaparte claims he is suffering from headaches and a loss of vision. ECF No. 1 at 3 & ECF No. 1-1.

Pending is an unopposed[2] Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by counsel on behalf of the Medical Defendants. ECF No. 10. No hearing is

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of Defendants' names.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk of Court on July 21, 2015, informed Bonaparte that Defendants Wexford and Storm had filed a dispositive motion; that he had seventeen days in which to file written opposition to the motion; and that if he failed to respond, claims against Wexford and Storm could be dismissed without further notice. *See* ECF No. 11. Bonaparte has chosen not to respond.

needed to resolve the issues raised in the Complaint. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, the motion will be granted.³

## I. LEGAL ANALYSIS

### A. Standard of Review—Motion to Dismiss

"The purpose of a Rule 12(b)(6) motion [to dismiss] is to test the sufficiency of a complaint." *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (internal quotation marks and citation omitted). A Rule 12(b)(6) motion constitutes an assertion by the Defendant that, even if the facts that plaintiff alleges are true, the complaint fails, as a matter of law, "to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). Therefore, in considering a motion to dismiss under Rule 12(b)(6), a court must "accept[ ] as true the well-pled facts in the complaint and view[ ] them in the light most favorable to the plaintiff." *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011) (internal quotation marks and citation omitted).

The Medical Defendants claim they are entitled to dismissal on the basis of qualified immunity. They further argue that Bonaparte's Complaint merely alleges medical negligence and thus cannot be pursued because he failed to first file a claim in the Health Care Alternative Dispute Resolution Office, a statutory requirement under Maryland law. ECF No. 10 at 1–2. Defendant Wexford asserts that claims against it must be dismissed because Wexford is not amenable to a civil rights action under 42 U.S.C. § 1983.

### 1. Qualified Immunity

Defendants claim entitlement to qualified immunity, citing *Filarsky v. Delia*, __ U.S. __, 132 S.Ct. 1657, 1667–68 (2012). ECF No. 10 at 18-19. *Filarsky* overturned the denial of

---

³ Defendant "RN Melissa" was never identified and thus not served with the Complaint. Had this employee been identified and served, she also would be entitled to summary judgment based on the findings herein. Thus, this claim is dismissed both for failure to prosecute and on the merits of the claim.

2

qualified immunity to an attorney who was retained by a city in California to assist in an internal investigation concerning a firefighter's potential wrongdoing. *Id.* at 1666. Defendants fail to demonstrate that *Filarsky* has been extended to contractual health care providers working in detention centers or correctional facilities, and the Court will not extend the holding in *Filarsky* based on the record before it in the instant case.

### 2. Medical Negligence

The Medical Defendants also assert that the Complaint must be dismissed because Bonaparte failed to comply with Maryland's Health Claims Arbitration Act. ECF No. 10 at 20–21; *see also* Md. Code Ann., Cts & Jud. Proc., §3-2A-02. The Act requires, as a condition precedent to filing suit for "damages of more than the limit of the concurrent jurisdiction of the district court," that a plaintiff first file a claim with the Director of the Healthcare Alternative Dispute Resolution Office. *Id.*, *see also* Md. Cts & Jud. Proc., Code Ann. § 3-2A-04(a). Maryland state district courts have exclusive original jurisdiction over "an action in contract or tort, if the debt or damages claimed do not exceed $30,000, exclusive of prejudgment or postjudgment interest, costs, and attorney's fees." Md. Cts & Jud. Proc., Code Ann. §4-401. The instant Complaint seeks $500,000 in damages. Even if Bonaparte intended to additionally allege a claim of medical malpractice pursuant to this Court's supplemental jurisdiction,[4] it is clear from the face of the Complaint that it was filed on pre-printed forms for a civil rights action filed pursuant to 42 U.S.C. §1983, and was construed as such by this Court. The asserted failure to comply with the Health Claims Arbitration Act is not an adequate basis for dismissal of the Complaint.

---

[4] *See* 28 U.S.C. §1367(c).

### 3. Amenability to Suit under 42 U.S.C. § 1983

Defendant Wexford argues that the Complaint should be dismissed against it because as a corporate entity Wexford cannot be held liable under 42 U.S.C. § 1983. ECF No. 10 at 19-20. The Court agrees. Under § 1983, liability is imposed on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights. . . ." 42 U.S.C. § 1983. The statute requires a showing of *personal* fault, whether based upon the Defendant's own conduct or another's conduct in executing the Defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir.1987), *rev'd on other grounds*, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1977) (in order for individual defendant to be held liable pursuant to 42 U.S.C. § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights . . .") (quoting *Bennett v. Gravelle*, 323 F.Supp. 203, 214 (D.Md.1971), *aff'd*, 451 F.2d 1011 (4th Cir.1971)).

Moreover, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services*, 316 Fed. Appx. 279, 282 (4th Cir. 2009). Bonaparte's claim against Wexford asserts no other theory of liability. Accordingly, Plaintiff's claim against Defendant Wexford is dismissed. Because the Court will consider matters outside of the pleading, the arguments supporting Storm's dismissal will be construed as a Motion for Summary Judgment.

B.   **Standard of Review – Motion for Summary Judgment**

"When matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in [Fed. R. Civ. P.] 56." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998) (alteration in original) (quoting Fed. R. Civ. P. 12(b)) (internal quotation marks omitted). Under Fed. R. Civ. P. 56(a), the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48 (alteration in the original). A "material fact" is one that might affect the outcome of a party's case. *Id.* at 248; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (citing *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; accord *Hooven-Lewis*, 249 F.3d at 265.

### 1. Alleged Violation of the Eighth Amendment

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976), and scrutiny under the Eighth Amendment "is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003). In the context of denial of medical care, an Eighth Amendment violation arises when the actions of a defendant, or the failure to act, amount to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical issue creating a substantial risk of serious harm and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The medical records clearly establish that Defendant Storm was not indifferent to a serious medical need. Bonaparte was seen by medical staff on February 13, 2015, immediately after an accident in the prison kitchen. Bonaparte lost his grip on a tray that struck him in the face. A small laceration to his left eyelid did not require stitches, and was cleaned and bandaged. He did not lose consciousness, and his vital signs were normal. ECF No. 10-1 at 1–2. Bonaparte did not complain of impaired vision, dizziness, headaches, or other problems, and there was no discussion of, or suspicion that, he had suffered a concussion. *Id.*

No problems were noted during his examination on February 17, 2015. *Id.* at 5. On February 18, 2015, Bonaparte complained of a headache and was given Motrin. *Id.* at 6. That same evening, he was seen by medical personnel for a complaint of dizziness. His gait was normal and he denied vomiting. *Id.*.

Bonaparte was examined by Defendant Storm on February 26, 2015, for complaints of migraine headaches and intermittent dizziness. *Id.* at 3–4. He denied loss of consciousness at the time of the kitchen accident or at any time thereafter, and indicated that he returned to work the day after the accident. Bonaparte also denied any loss of or impaired vision, nausea, vomiting, fever, fatigue, or night sweats, and indicated his headaches had become less severe. *Id.* Bonaparte was in no apparent distress and showed no neurological deficit upon examination. He was alert and oriented, his pupillary reaction was normal, and his extraocular movements were intact. *Id.* Storm ordered 500 mg Excedrin Tension Headache medication and instructed Bonaparte to use cold compresses to the forehead when he had a headache. Bonaparte was instructed to follow up if his condition worsened or if there was no improvement in ten days. *Id.*

When Bonaparte reported little relief, Storm substituted the tension headache medication with 250 mg of Excedrin Migraine, effective March 4, 2015. *Id.* at 10. On March 8, 2015, Bonaparte expressed concerns about the change in medication to a nurse, and asked to have his activity restrictions lifted. *Id.* at 11. During this visit his vital signs were normal, and he did not complain of dizziness, vision problems, headache, nausea, vomiting or weakness. As there was no indication of concussion, the restrictions were lifted. *Id.*

Bonaparte complained of chest pains on March 16, 2015, but made no complaints of headaches, dizziness, loss of or impaired vision, nausea, vomiting, or weakness. *Id.* at 13. On March 21, 2015, he filled out a sick call slip stating that "for the past 7 or 8 days, the headaches have been slight and not that bad," but that his headache that day (on March 21) woke him and that about 20–25 minutes later "it went away by itself." *Id.* at 15. On March 30, 2015, he complained to a nurse of intermittent headaches with minimal relief on Excedrin Migraine. The nurse noted his vital signs were normal and referred Bonaparte to a mid-level provider. *Id.* at 16.

Bonaparte was again seen on April 1, 2015, complaining of a headache. *Id.* at 18–19. On May 4, 2015, he was seen by both a nurse and physician for chronic care follow up for asthma, esophageal disease, and hyperlipidemia. His vital signs remained stable. He reported headaches, but made no complaints of dizziness, loss of or impaired vision, nausea, vomiting, or weakness at the time of either visit, nor was there any discussion or suspicion of concussion. *Id.* at 20–22. He complained about a rash on May 21, 2015. *Id.* at 23. He also indicated on May 24, 2015, that he needed a dental filling. *Id.* at 25.

Bonaparte visited the medical unit on three occasions in June, but never complained of headaches, loss of or impaired vision, nausea, vomiting, or weakness, nor was there any discussion or suspicion of concussion. *Id.* at 26–29. On June 12, 2015, he complained of dizziness due to the heat in his housing unit. *Id.* at 27. The heat was also blamed for his asthma flare-up on June 15, 2015. *Id.* at 29.

Nothing in the record suggests that Bonaparte continued to suffer from his accident, or that Defendant Storm and other health care providers failed to consider and treat his headaches and other unrelated medical complaints. Indeed, the record strongly suggests that Bonaparte did not suffer a concussion or other objectively serious injury as a result of the accident, but that he suffers intermittent headaches from some unrelated cause. That condition is frequently monitored and is kept under control with headache medication.

Bonaparte is not entitled to unqualified access to health care, *see Davis v. Williamson*, 208 F.Supp.2d 631, 633 (N.D.W.V. 2002) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)), and mere disagreement with the course of treatment provided, without more, does not state an Eighth Amendment claim. *See Taylor v. Barnett*, 105 F.Supp.2d 438, 487 (E.D. Va. 2000) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)). Even viewing the evidence in the light

most favorable to the Plaintiff, Defendant Storm was not indifferent to a serious medical need. Thus, the Eighth Amendment claim against Defendant Storm is dismissed.

## II. CONCLUSION

For these reasons, the unopposed Motion filed on behalf of the Medical Defendants, construed both as a Motion to Dismiss and as a Motion for Summary Judgment, is granted in a separate Order.

Date: 11/30/2015

GEORGE JARROD HAZEL
United States District Judge